JOSEPH F. DOYLE V. THE HAYS LAND & INVESTMENT
COMPANY.

No. 16,036.

SYLLABUS BY THE COURT.

1. JUDGMENTS—*Publication Service—Description of Parties —
Assignment of Interest Not Recorded.* An assignment of a
mortgage was made to "Jessie L. Williams, wife of Edward
H. Williams," and was duly recorded: In a suit to quiet title,
brought afterward by the holder of a tax deed to the mort-
gaged lands, this assignee of the mortgage was made a party
by the designation "Mrs. Edward H. Williams," and by that
name was given notice by publication. She had assigned the
mortgage to another party (under whom the plaintiff in this
suit claims) before the judgment in the suit to quiet title, but
this assignment was not recorded until afterward. Mrs. Will-
iams was a widow at the date of the publication, and resided
in Massachusetts. Judgment was rendered in that suit by
default against the defendants therein, including Mrs. Ed-
ward H. Williams, quieting title and barring the defendants
named from any interest in the land. The plaintiff in that
suit then sold and conveyed the land to another, under whom
Doyle holds through mesne conveyances by warranty deed for
a valuable consideration, and Doyle was in possession claiming
such title when this suit was brought by the investment com-
pany to foreclose the mortgage which it so held by assignment.
*Held,* that under the facts stated in the opinion the designa-
tion of Jessie L. Williams as "Mrs. Edward H. Williams" in
the petition and notice published was sufficient to permit an
adjudication of the interest and claims of the plaintiff, hold-
ing under her by an assignment not recorded when the pub-
lication was made, the title to the mortgage appearing at that
time by the records to be in her.

2. PARTIES—*Transfer of Interest before Suit—Transfer Not Re-
corded—Proceeding in Error.* Where the records show a title
in one who is made a defendant in a foreclosure suit in order
to bar his interest in the land, and he pleads title to the land
in fee, and the issues arising upon such pleading are fully
tried and adjudicated against him, he may maintain a petition
in error upon such judgment, although it was shown upon the
trial that a conveyance from him to another person, not a
party to the suit, had been made before the suit was brought,
it being also shown that such conveyance was not recorded

14—80 KAN.

until afterward and that no motion was made for substitution. In this situation the plaintiff who made him a party and obtained a judgment against him can make no valid objection to his presenting the judgment to this court for review.

Error from Kearny district court; WILLIAM H. THOMPSON, judge. Opinion filed May 8, 1909. Reversed.

*C. T. Clark,* and *William Easton Hutchison,* for the plaintiff in error.

*Lee Monroe,* and *George A. Kline,* for the defendant in error.

The opinion of the court was delivered by

BENSON, J.: The Hays Land & Investment Company commenced this suit July 7, 1906, to foreclose a mortgage made by William U. Miller on March 30, 1887. Joseph F. Doyle was made a defendant. The prayer was for personal judgment against Miller on the promissory note given with the mortgage, and for foreclosure against all the defendants. The mortgage was made to the Equitable Trust & Investment Company, and was assigned May 26, 1887, to Jessie L. Williams, wife of Edward H. Williams, and the assignment was recorded in Hamilton county at a time when Kearny county was attached to it for judicial purposes. On June 12, 1903, Jessie L. Williams assigned the mortgage to Edward E. Parker, which assignment was recorded October 17, 1904, and Edward E. Parker assigned the mortgage to the plaintiff June 6, 1905.

Defendant Miller answered pleading the statute of limitations. Defendant Doyle in his answer alleged that he was the owner of the land in fee simple and in peaceable possession thereof, denied the plaintiff's title, and pleaded a judgment of the district court of Kearny county in a suit brought therein by F. C. Puckett against the Equitable Trust & Investment Company, Mrs. Edward H. Williams, and others, wherein

it was adjudged that the title of F. C. Puckett in the real estate which is the subject of this suit should be quieted and all the defendants named in the action should be barred from any right, title, estate or equity of redemption in or to the land. The answer further alleged that defendant Doyle held the property through mesne conveyances from Puckett, relying upon that judgment, and further alleged that the mortgage had not been recorded in Kearny county, as required by chapter 107 of the Laws of 1899.

On the trial the plaintiff dismissed its suit against William U. Miller, and the suit proceeded for fore-closure only. Defendant Doyle offered in evidence the tax deed to the land in question, dated October 31, 1902, recorded November 31, 1902, in Kearny county, and the judgment entered June 23, 1903, pleaded in his answer. It was admitted that Puckett conveyed the land after this judgment had been rendered, that Doyle held under Puckett's grantee by warranty deed for a valuable consideration, and that the land was unoccupied at the time the judgment was rendered.

The petition in the suit brought by Puckett was in the usual form to quiet title. Service was made by publication, and the notice was directed, among others, to Edward H. Williams and Mrs. Edward H. Williams, his wife, and was in the usual form. The court allowed the judgment in the Puckett case to be read in evidence, reserving its ruling upon an objection made thereto, which it afterward sustained. Thereupon defendant Doyle offered in evidence the petition, affidavit for publication and publication notice in that case, to which the plaintiff objected, and the objection was sustained. Judgment was rendered finding the amount due on the Miller mortgage to be $608, that Doyle had the first lien for taxes by virtue of the tax deed for $70.90, and barring and foreclosing him from any other estate, title or interest in the land.

Defendant Doyle contends that his title to the land

was perfect and should have been sustained, because the mortgage made by Miller was never recorded in Kearny county, as required by the act of 1899, and because the title of Puckett, under whom he held through mesne conveyances, had been adjudged valid and his title quieted against the Equitable Trust & Investment Company and Mrs. Edward H. Williams, under whom the plaintiff claimed by assignment of the mortgage.

The suit of Puckett was commenced April 18, 1903. Before that time the Equitable Trust & Investment Company had assigned the mortgage, which assignment was recorded October 25, 1890. Thus it appears that the Equitable Trust & Investment Company had no interest in the mortgage when the Puckett suit was brought. To avoid this result defendant Doyle insists that the record of the assignment was insufficient to impart notice, and hence the owner was barred. The objection made to the assignment is that it does not sufficiently describe the mortgage, the description being that of a mortgage made by William U. Miller to the Equitable Trust & Investment Company, and referring to the book and page of the record. This was sufficient to impart notice.

A more important question is the effect of the judgment quieting title against Mrs. Edward H. Williams. While the assignment by Jessie L. Williams was made before the judgment in the Puckett suit, it was not recorded until more than a year afterward. It was held in *Utley v. Fee*, 33 Kan. 683, in a suit brought by the holder of a tax title to quiet title, where he had no knowledge or notice of any other claim and no one was in the possession of the property holding adversely to him, that the decree in his favor quieted his title against all persons holding under the original owners by deeds previously executed but not recorded. Following this rule, if the publication was sufficient it bound the plaintiff, who held under assignments made

Doyle v. Hays.

before, but not recorded until after, the decree was entered. It is true that in the assignment made by her she is described as Jessie L. Williams, and signed the instrument by that name, but the assignment had not been recorded when the suit was brought nor when the decree was entered, and in the assignment made to her, which was on record at these dates, she was described as "Jessie L. Williams, wife of Edward H. Williams." The mortgage then appeared of record to be owned by Jessie L. Williams, wife of Edward H. Williams. In all the proceedings, including the publication notice in the Puckett suit, she was designated only as "Mrs. Edward H. Williams." The vital question here is whether the notice was sufficient to bind the plaintiff, holding under Jessie L. Williams by an assignment recorded after the decree. It was admitted that Edward H. Williams died in 1899. Although Mrs. Williams was described as the wife of Edward H. Williams, she was in fact his widow.

Notice to non-residents is required to be published in the county where the land is situated. This gives notoriety to the proceedings, from which it may be presumed that a party, if he do not in fact see the notice, will learn of it, because of his interests in the locality. It may be presumed that the plaintiff in the suit to quiet title, claiming to own this land under the tax deed, consulted the records to ascertain who were necessary parties to be made defendants in the suit, and finding, among others, that Jessie L. Williams, wife of Edward H. Williams, appeared by the record to own this mortgage, he made her a party by the name "Mrs. Edward H. Williams." The notice contained a description of the land and named the party with sufficient precision fairly to indicate her identity and challenged her attention and inquiry. It can not be said that Mrs. Williams and the parties holding under her or otherwise interested in the land would be misled by the name by which she was designated.

"Notice is all that is required to confer jurisdiction. To obtain complete and definite information the parties served must follow up the suggestions contained in the notice by due investigation and inquiry." (*Sharp v. McColm,* 79 Kan. 772, 776.)

In *Fanning v. Krapfl,* 61 Iowa, 417, it was held upon a demurrer to a petition that service by publication of a notice directed to P. T. B. Hopkins, wife of John C. Hopkins, did not give the court jurisdiction of T. Phelia Boyd Hopkins or T. P. B. Hopkins. After the cause was remanded to the district court a pleading was filed in which it was alleged that T. P. B. Hopkins was in fact the wife of John C. Hopkins when the notice was published and when the judgment was rendered, and that she was better known in the county as the wife of John C. Hopkins than by her Christian name or by the initial letters of that name. The district court struck out this averment, holding that the publication of the notice as it had been made did not give the court jurisdiction of T. P. B. Hopkins. In a review of this second judgment the apparent effect of the former opinion was very greatly changed. The court said:

" 'The office of the notice is in part to give the pendency of the action notoriety. It should be such that others than the defendant, seeing it, and knowing the defendant, or knowing of him, would not probably be misled by it as to the person for whom it was intended.' . . . The notice should describe the party to whom it is directed with such certainty as that neither he, nor other persons acquainted with or knowing him, could reasonably be misled by it as to the person for whom it was intended; and it seems to us that, conceding the truth of the allegations stricken from the answer, the notice in question was sufficient to give the court jurisdiction of T. P. B. Hopkins. . . . If the same notice had been served personally upon her, there could be no question, we think, but that the court would have acquired jurisdiction of her by the service, and any notice which would give jurisdiction if personally served upon the party is good when served by publication, if that publicity of the pendency of the action

Doyle v. Hays.

which the law intends is thereby given. That is, a description in the notice of the person intended, which would be sufficient if the service was personal, is also sufficient when the service is by publication, if those who know the person intended would naturally recognize him by that description." (*Fanning v. Krapfl,* 68 Iowa, 244, 246, 247.)

In *Schee v. La Grange,* 78 Iowa, 101, the effect of a decree quieting title entered by default upon a publication notice was considered. One of the defendants had been designated as Charles A. Lucken*bough,* assignee of Benjamin G. Unangst. His name in fact was Charles A. Luckenbach. An objection being made to this decree, the court said:

"Absolute accuracy in names in such cases is not required. The proceeding as against Luckenbach and Chapman is in their representative capacity, and they are thus described in both notice and petition. Where parties are thus relatively designated, there is less reason for a technical adherence or exactness as to names than in other cases. In *Fanning v. Krapfl,* 68 Iowa, 244, this court gave a rule which we think is authorized by precedent and reason, and guides to a proper conclusion in this case." (Page 106.)

In *Cruzen v. Stephens,* 123 Mo. 337, it was held that a service by publication of notice addressed to "Etta R. Fisher and ——— Fisher, her husband," (p. 344) was valid as against a collateral attack. The action was in ejectment. The defendants claimed title under a sheriff's sale in a tax suit, wherein judgment had been rendered by publication. The court said:

"The object of giving notice by publication is to advise the parties, to whom the notice is directed, of the proceedings mentioned.

"If the notice effectively does that, it should be held sufficient against any collateral attack.

"Judge Vanfleet thus summarizes the rule deducible from principle and well-considered cases: 'That the omission of the name of a defendant from the process makes the judgment void in respect to him, is plain; but, where he is so described that he would not be

misled, it is not void.' (Vanfleet's Collateral Attack, §§ 356, 361.)

"It certainly seems to accord with just principles of law and of common sense that where the notice names the parties defendant with sufficient definiteness to plainly indicate their identity, it should be held good and not void, when questioned in this collateral way.

"Here the notice in effect was directed to Etta R. Fisher and Mr. Fisher, her husband. It would have been practically no more informative of the identity of John Fisher, her husband, had the blank in the order and in the petition in that case been filled with his first name." (Page 345.)

In the assignment of the mortgage under which the plaintiff in this suit claims title, the descriptive words "wife of Edward H. Williams" were added to the name "Jessie L. Williams." This designation, by the registry of the assignment, became a part of the recorded title, imparting notice not only to third persons but to the assignee, Parker, and the plaintiff holding under him, of the fact that Jessie L. Williams was the wife of Edward H. Williams. They would have been bound by notice duly published against Jessie L. Williams; ought they not to be equally bound by notice to Mrs. Edward H. Williams, which is only another way of designating the wife of Edward H. Williams, the very person named in the assignment through which they derive title?

In *Blinn v. Chessman*, 49 Minn. 140, it appeared that a conveyance had been made to the defendant and recorded under the name "George Cheeseman." Chessman left the state and became a non-resident. An action was commenced by one Leonard, who claimed to own the property, against Chessman to determine adverse claims. The service was by publication against "George Cheeseman," and judgment was rendered by default excluding him from any interest in the land. In another action to recover the land this judgment

was offered in evidence. The trial court held the judgment valid.  On review it was said:

"The court was right in treating the judgment as binding upon this defendant, so far as concerned his interest in this land.  This conclusion is not based upon the ground of the likeness of the two names, either in spelling or in sound; but upon the ground—upon which also the decision of the court below was placed—that the defendant is to be deemed to have adopted the name of *Cheeseman* for the purpose of acquiring and holding the title to this land, and he can have no reason to complain that he is so designated in legal proceedings calling in question the validity of the title so acquired and held.  From the fact that this was not his true name it does not follow that the court did not acquire jurisdiction.  If he had assumed this name, or any other, generally, and for all purposes, and especially if he had come to be known by the name assumed, there would be no doubt that legal proceedings against him in such name would, in general, be sustained.  The name is not the person, but only a means of designating the person intended; and where one assumes and comes to be known by another name than that which he properly bears, that name may be effectually employed for the purpose of designating him.  If such a name is employed in legal process or notices, whether served personally or by publication—where such service is authorized, the notice is effectual; the person who has assumed the name is presumed to understand that the process or notice addressed in that name is addressed to him.  .  .  .  He not only accepted the conveyance made to himself by that name, but he placed it on record, for the purpose, and with the effect, presumably, of giving notice to the world that the title had been so conveyed and was so held.  He must be deemed to have understood that thereafter persons becoming interested in the land would consult the record, and might be expected to act upon the notice thus communicated to them." (Pages 145, 146.)

In *Thompson v. McCorklé*, 136 Ind. 484, the publication against "John McCorkle, and ——— McCorkle, his wife," was held to be insufficient, and in the opinion the court used the language quoted by Mr. Justice Greene in *Whitney v. Masemore*, 75 Kan. 522, to the

effect that in a suit to quiet title after the death of John McCorkle the notice was not sufficient to bring his widow within the jurisdiction of the court. The Indiana case was an action to set aside a judgment entered upon publication notice for fraud in obtaining it. In the opinion that court said:

"The complaint shows that plaintiff resided in Shelby county, Indiana, for seventy years continuously, and that the only service, as to her, was by publication addressed to ——— McCorkle, wife of John McCorkle; that the husband had died May 20, 1880.

"We recognize the rule that even on constructive service the question of the jurisdiction of a court of record over the parties to any domestic judgment must, in all collateral proceedings where fraud is not shown, be determined by the record, where the jurisdiction affirmatively appears from the record. In such case it would import absolute credit and verity and parties could not be heard to impeach it. In other words, it will be conclusively presumed that the court acted upon ample evidence and with due deliberation before making such statement; and the judgment will be impregnable to any collateral assault by proof *aliunde*.

"In *Muncie v. Joest, Treas.*, 74 Ind. 409, the court says: 'There is a clear distinction between cases in which there is no notice whatever, and those in which there is a mere defective or irregular notice. The general rule upon the subject, deducible from the authorities, may be thus stated: If there is no notice whatever, and this affirmatively appears upon the face of the proceedings, the judgment will be void, and may be overthrown by a collateral attack. If a court, having jurisdiction, . . . and required to determine all jurisdictional questions, either expressly or impliedly, adjudges that notice was given, its decision will repel a collateral attack, unless the record of the court affirmatively show that no notice was given; and this is so although the record show a defective and irregular notice.'" (Page 490.)

Thus it appears that the statement in the opinion that the judgment against Mrs. McCorkle was void was made concerning a direct proceeding to set aside that judgment, and not in a collateral action, as in this case.

Doyle v. Hays.

The distinction between the effect of judgments when directly assailed and when attacked in a collateral action is well known, and is stated in *Sharp v. McColm*, 79 Kan. 772, and in the cases cited.

It is urged that the designation of the party as the wife of Edward H. Williams was incorrect because she was at that time a widow. It must be remembered, however, that this designation was taken from the record. It appears that she was a resident of Massachusetts, and it can not be presumed that Puckett, when he commenced his suit, had knowledge of the death of her husband.

In *Jones v. Kohler et al.*, 137 Ind. 528, it was held that where a married woman interested in land shifted about from place to place, and her whereabouts had been unknown for many years, notice by publication in a suit to quiet title against her by her former name was sufficient, although her husband had died and she had since married. The court said:

"In this instance the notice was given to the interested party in the only name by which she was known within the jurisdiction of this state, the only name by which, as she well knew, she would be dealt with in this state, that name in which she would necessarily be notified of the pendency of legal proceedings, and that name which, when reading the notice, she would, of course, understand to apply to herself." (Page 531.)

The decisions upon this subject are numerous and not harmonious. Many of them are reviewed in Vanfleet's Collateral Attack, sections 355 to 367, inclusive, and later decisions are cited in volume 40 of the American Digest, Century edition, columns 2673, 2674. Vanfleet, at section 367, calls attention to the fact that the distinction between direct and collateral proceedings has not always been kept in view, which fact may account for some of the apparent conflict. The author concludes that the notice is sufficient as against collateral attack if the defendant is so designated or described that after reading it he could not be misled.

In *Whitney v. Masemore,* 75 Kan. 522, the publication was against "—— Whitney, and —— Whitney, his wife." The Christian name of neither was given, and there was nothing to distinguish the Whitneys so sued from other persons bearing that surname. The case is easily distinguishable from the one now under consideration. The name used in this publication would attract the attention of the widow, and this designation, appearing in the record, would give notice to the assignees. The important question is the effect of this notice upon them, for Mrs. Williams had parted with her interest before the publication was made. The notice must be held sufficient as against a collateral attack.

The judgment in the Puckett suit should have been received in evidence, together with the papers offered in connection therewith. Defendant Doyle being a purchaser for value, after that judgment had been rendered, appeared to hold the land free from the claims of the plaintiff under the mortgage. (*Howard, Adm'r, v. Entreken, Adm'r,* 24 Kan. 428.)

The case-made does not contain copies of the petition, publication notice and printer's affidavit, but does contain a statement that these papers were offered in evidence, and that the petition was in the usual and regular form, praying that title to the lands in question be quieted and that the defendants, whose names were stated, be barred of any right, title, interest or equity in the land. The case-made also states that the affidavit for publication was in the usual form to obtain service on non-resident defendants, and that it named the same defendants as the petition. It is also stated that the notice of publication was in the usual, regular form, and included the names of the same defendants and described the land as in the petition. The case-made also states that the printer's affidavit of publication was in the usual, regular form, showing that the publication had been made as required by law. The

Doyle v. Hays.

plaintiff contends that as the case-made does not contain copies of these papers this court can not determine whether the petition stated a cause of action, whether the affidavit for publication was a sufficient basis therefor, whether the publication imparted notice, or whether the printer's affidavit proved the publication; and that, in the absence of such proof, it must be presumed that the district court decided correctly in rejecting the judgment. The statute requires that the case-made shall contain:

"A statement of so much of the proceedings and evidence, or other matters in the action, as may be necessary to present the errors complained of to the supreme court." (Civ. Code, § 547.)

The case-made may be very brief, and was devised mainly for the purpose of abridging the record and lessening the expenses of review. (*Neiswender v. James,* 41 Kan. 463.) This beneficent purpose has not always been kept in view. It is not necessary to set out copies of lengthy documents; a brief summary of their contents, including all that is material, is sufficient. If upon the service of the case this summary is deemed insufficient, amendments may be suggested. Proof of the proper publication must be presumed from the fact that a judgment was rendered upon it. The record appears to be sufficient fairly to present the errors complained of for the consideration of this court.

After defendant Doyle had rested the plaintiff in rebuttal offered in evidence the record of a conveyance of the land in question from Doyle to John F. Walthel, dated June 18, 1906, and recorded July 18, 1906, and it is now insisted that Doyle has no right to a review here. The plaintiff alleged in its petition that Doyle claimed an estate or interest in the land which was inferior to the lien of the plaintiff's mortgage, and prayed that Doyle, with the other defendants, be foreclosed. Issues were made and the trial proceeded throughout upon the theory that Doyle did claim such interest, and

that interest was adjudicated. The judgment being against Doyle, he instituted proceedings in error to this court as any other litigant. Section 40 of the civil code provides that upon the transfer of an interest during the pendency of an action it may be continued in the name of the original party or the court may allow substitution to be made. The conveyance was not recorded until after this suit had been commenced, hence the defendant Doyle was a proper party, and, if he and his grantee were content to have it proceed to judgment against him, it is not perceived why the plaintiff should complain.

It is not necessary to consider the effect of the statute of 1899, relative to the recording of mortgages in Kearny county.

The effect of the tax deed as a muniment of title was not open to consideration in this case. (*Brenholts v. Miller, ante,* p. 185.)

The judgment is reversed, and the cause remanded for a new trial.